**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DEVONA MION CALHOUN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 26-1571** |
| **HERITAGE MANOR OF MANDEVILLE** | **SECTION: "T"(1)** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Devona Mion Calhoun has filed this lawsuit against Heritage Manor of Mandeville. Because she has failed to state a federal claim and there is no basis for diversity jurisdiction, IT IS RECOMMENDED that the Complaint be DISMISSED without prejudice for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1915(e)(2)(B).

Background

Ms. Calhoun was employed as a nurse by Heritage Manor of Mandeville. She alleges that she had "issues from the beginning concerning pay, shifts, being paid bonuses on time" and never receiving a uniform even though uniforms were usually provided upon hire. She alleges that she reported faulty wheelchairs that locked on only one side, Hoyer lifts that did not work properly, and residents' beds that were not functioning properly. She submits that these issues cause strain to nursing staff and can cause harm to the residents.

She describes an incident when she followed instructions and placed a special seat cushion to assist a resident known for falls. She reported that she did not think the cushion was safe but was told to follow orders. The resident fell face forward, and Ms. Calhoun was accused of appearing not to care on the video surveillance. Ms. Calhoun explains that she was upset but did not panic as she had been taught to do.

Ms. Calhoun also challenges what appear to be the reasons provided by the company for her termination. As to the claim that she left her shift early on May 17, 2025, because she was unhappy with her hall assignment, she explains that she left to comply with State policy when she noticed her TB test was expiring and no staff nurse would administer it to her. As to the company's claim that she did not show up for her weekend shift after she was told she could not be excused from the shift by doing a double shift during the week because no double shifts were available, she insists that the facility is always short staffed and always has needs. She adds that she did not remain on the schedule for the weekend.

Ms. Calhoun also alleges that when she was terminated, she was supposed to get $900, but the company paid the insurance company $350 out of her last check and terminated her health insurance the same day.

Ms. Calhoun initiated this lawsuit on July 16, 2026, against Heritage Manor of Mandeville using the Court's Complaint for Employment Discrimination form. She has checked the boxes to allege claims of race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and violation of the Fair Labor Standards Act ("FLSA"). She invokes this Court's federal-question jurisdiction under 28 U.S.C. § 1331. But, the facts she alleges do not describe any race-motivated action by her employer or any action by the employer after she attempted to invoke her Title VII rights. Nor does it appear she has alleged any facts that implicate the FLSA.

The Court permitted Ms. Calhoun to proceed *in forma pauperis* in the instant proceeding under the provisions of 28 U.S.C. § 1915(a). However, the Court withheld summons so it could review the Complaint to determine whether it satisfies the requirements of the federal *in forma pauperis* statute. The Court ordered Ms. Calhoun to show cause in writing why her lawsuit should not be dismissed for failure to state a claim and/or for lack of subject matter jurisdiction.

Ms. Calhoun timely filed a response. She insists she was wrongfully terminated. She again cites the company's refusal to provide her with a TB test. She adds that she was not assisted with updating her BLS (cpr). She describes the issue with the termination of her health coverage. She submits that her Title VII discrimination claims are based on:

1. Heavier or lower-level tasks are given only to certain groups.
2. Strict rules and harsh discipline applied to me and not others.
3. Microaggressions or constant questioning of my skills.
4. Deliberate exclusion from team meetings.
5. Being passed over for promotions despite good work.
6. The Company provides staff with their first two free uniforms; I was not given.

Rec. Doc. 5, at 2. She submits that her retaliation claims are based on conduct that occurred after she reported "negligence, working with faulty equipment, asking for more/better pay, Etc." Id. She submits she has provided texts showing she was not a bad employee. She says she has never been written up.

Additionally, she has attached her communications with Heritage Manor. One purportedly shows that she complained about stress and anxiety over the possibility of not being paid in full. Another reflects her application to work double shifts in April 2025. She also attaches a job posting that shows pay of $14.50 to $17 per hour along with her communication to the company complaining that she had only been offered $15.45 per hour despite her 15 years of experience and requesting to be paid "at least the $17+/hr the company is currently already advertising and preparing to pay new recruits." Rec. Doc. 5-1, at 3.

## Law and Analysis

### 1. *Section 1915 Review*

There exists no absolute right to proceed *in forma pauperis* in federal civil matters; instead, it is a privilege extended to those unable to pay filing fees *when it is apparent that the claims do*

*not lack merit on their face*. See Startii v. United States, 415 F.2d 1115, 1116 (5th Cir. 1969); see also Adepegba v. Hammons, 103 F.3d 383, 387 (5th Cir. 1996) (noting that the revocation of the privilege of proceeding in *forma pauperis* is not new), abrogated in part on other grounds by Coleman v. Tollefson, 135 S. Ct. 1759, 1762-63 (2015)).

28 U.S.C. § 1915(e)(2)(B) provides for summary dismissal *sua sponte*, should the Court determine that a case is frivolous. Section 1915(e)(2)(B) provides in pertinent part as follows:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court **shall dismiss** the case at any time if the court determines that –
> * * *
> (B) the action or appeal –
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B)(i)-(iii) (emphasis added). "To determine if a complaint fails to state a claim" under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court applies the same standard "applicable to dismissals made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Id.* In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level." Id. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a

> defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Furthermore, federal courts are courts of limited jurisdiction. "Subject matter jurisdiction may not be waived, and the district court 'shall dismiss the action' whenever 'it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter.'" Avitts v. Amoco Prod. Co., 53 F.3d 690, 693 (5th Cir.1995) (quoting Fed. R. Civ. P. 12(h)(3)).

2. *Purported Title VII Claims*

Title VII prohibits a covered employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). To survive a motion to dismiss, a plaintiff must plead sufficient facts on the ultimate elements of her claim: "(1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* her protected status.'" Cicalese v. Univ. of Texas Med. Branch, 924 F.3d 762, 767 (5th Cir. 2019) (quoting Raj v. Louisiana State Univ., 714 F.3d 322, 331 (5th Cir. 2013)).

Ms. Calhoun has not alleged any facts that could possibly be construed as showing that Heritage Manor was motivated to terminate her employment because of her race. She does not allege her race, the race of any other employees, or the use of any racial slurs or comments. The Court's Show Cause Order pointed out that she had failed to allege facts showing that Heritage Major was motivated by her race. And yet, Ms. Calhoun's response *still* fails to describe any facts to support finding that Heritage Manor was motivated by her race in any of its actions. Ms. Calhoun has not plausibly stated a claim for race discrimination under Title VII.

In addition to race discrimination, Title VII prohibits an employer from retaliating against an employee because she "has opposed any practice made an unlawful employment practice by

this subchapter . . . ." Id. § 2000e-3(a). "Protected activity can consist of either: (1) 'oppos[ing] any practice made an unlawful employment practice by this subchapter' or (2) 'ma[king] a charge, testif[ying], assist [ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter.'" E.E.O.C. v. Rite Way Serv., Inc., 819 F.3d 235, 239 (5th Cir. 2016) (quoting 42 U.S.C. §2000e-3(a)) (alteration in original).

Ms. Calhoun has not alleged any facts showing that Heritage Manor terminated her employment in retaliation for her engaging in any activity protected by Title VII. To the contrary, Ms. Calhoun alleges in her complaint that she was terminated for raising safety concerns. This type of activity is not protected by Title VII. Accordingly, it cannot form the basis of a Title VII retaliation claim. Her response to the Court's Show Cause Order does not offer any reason to believe that she engaged in activity protected by Title VII. Instead, she argues that the basis for her retaliation claim is that she was terminated after she complained about "negligence, working with faulty equipment, asking for more/better pay." Making these types of complaints is not protected by Title VII. Further, the communications Ms. Calhoun submitted do not show that she complained about racially motivated discrimination or otherwise attempted to invoke her Title VII rights. There is no basis to find that Ms. Calhoun engaged in an activity protected by Title VII, and therefore she cannot state a Title VII retaliation claim.

3. *Purported FLSA Claims*

The FLSA regulates "wages and hours of employment." 48B Am. Jur. 2d Labor and Labor Relations § 2741. It provides for a minimum wage and rules pertaining to overtime pay. 29 U.S.C. §§ 206, 207. But, the statute "does not regulate the method, practice, or system by which compensation is paid." 48B Am. Jur. 2d Labor and Labor Relations § 2741. Nor does it cover "the required duties and degrees of care for the safety of persons exposed to danger." Id.

Here, Ms. Calhoun appears to challenge the payment of her health insurance premium and the simultaneous cancellation of her insurance. In a cursory fashion, she alleges that she had problems with her pay. But she does not claim that her pay did not reach the required minimum wage or that she was entitled to a different rate of pay for hours worked in excess of a forty-hour workweek. The Court highlighted this in its Show Cause Order. But Ms. Calhoun's response does not raise any new wage-related issues that could implicate a violation of the FLSA. Ms. Calhoun has failed to state a claim under the FLSA.

*4. Jurisdiction*

Ms. Calhoun's Complaint does not state a federal claim under Title VII or the FLSA. Nor does it appear she has stated any other federal cause of action. Accordingly, this Court cannot exercise federal question jurisdiction over her claims pursuant to 28 U.S.C. § 1331.

To the extent Ms. Calhoun's allegations may give rise to a state-law cause of action,[1] this Court cannot exercise jurisdiction over it. This Court has jurisdiction to consider state law claims where the complaint satisfies the requirements of 28 U.S.C. § 1332. In order for the Court to exercise diversity jurisdiction under 28 U.S.C. § 1332, the citizenship of all of the plaintiffs must be different from the citizenship of the defendants and the amount in controversy must be in excess of $75,000. 28 U.S.C. § 1332; see Getty Oil Corp., Div. of Texaco, Inc. v. Ins. Co. of North Am., 841 F.2d 1254, 1258-59 (5th Cir. 1988). However, Ms. Calhoun has not alleged diversity jurisdiction. Indeed, it appears that Ms. Calhoun and Heritage Manor are both domiciled in Louisiana based on the addresses provided in the Complaint. Ms. Calhoun's Show Cause response does not contest this observation. Accordingly, the Court does not have diversity jurisdiction over

[1] For example, she appears to allege that she was terminated for reporting violations of "Louisiana state compliance laws for employees who work in nursing homes."

Ms. Calhoun's claims under 28 U.S.C. § 1332 and this Court lacks subject matter jurisdiction over her Complaint.

Recommendation

Because Ms. Calhoun has failed to state a federal claim and because there is no basis for this Court to exercise diversity jurisdiction, IT IS RECOMMENDED that the Complaint be DISMISSED without prejudice for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1915(e)(2)(B).

**NOTICE OF RIGHT TO OBJECT**

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 2nd day of September, 2026.

Janis van Meerveld

Janis van Meerveld
United States Magistrate Judge